## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RAYMOND EUGENE JOHNSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CV-0016-CVE-FHM** |
| | ) | |
| **TERRY ROYAL, Warden,**[1] | ) | |
| **Oklahoma State Penitentiary,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus proceeding.  Petitioner Raymond Eugene Johnson is an Oklahoma death row prisoner, currently incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma.  In his petition (Dkt. # 22), Johnson, who appears through counsel, alleges that he was convicted of two counts of murder and "sentenced to death and his death sentence was affirmed in proceedings that were unfair and unconstitutional in several different ways."  Id. at 1. Respondent filed a response (Dkt. # 43) to the petition, Johnson filed a reply (Dkt. # 55) to the response, Respondent filed a surreply (Dkt. # 58), and Johnson filed a reply to the surreply (Dkt. # 59).  The state court record has been produced and supplemented.[2]  The Court considered all of these materials in reaching its decision.  For the reasons discussed below, the petition shall be denied.

---

[1]    As of July 27, 2016, Terry Royal is Warden of the Oklahoma State Penitentiary.  Pursuant to Fed. R. Civ. P. 25(d), Terry Royal, Warden, is hereby substituted as party respondent in place of Anita Trammell, Warden.  The Clerk of Court shall note the substitution on the record.

[2]    References to the transcript of the trial shall be referred to as "Tr. Vol. __ at __."  The original state court record for Tulsa County District Court, Case No. CF-2007-3514, shall be identified as "O.R. Vol. ___ at ___."  Motion hearings shall be identified as "M. Tr. (date) at ___."

# BACKGROUND

## I. Factual Background

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. Following review of the record, including the trial transcripts and evidence, this Court finds that the factual summary provided by the Oklahoma Court of Criminal Appeals (OCCA) in its order resolving Johnson's direct appeal is adequate and, unless otherwise noted, accurate. Therefore, the Court adopts the following factual summary as its own:

> Brooke Whitaker lived in a house on East Newton Street in Tulsa with her four children, the youngest of which, [K.W.], was fathered by Appellant.[3] Around February of 2007, Appellant moved in with Brooke and her children. By April of that year, Brooke and Appellant were having problems. Brooke told her mother that Appellant had threatened to kill her. Because she was frightened, Brooke and her children moved in with her mother for two weeks. During this two week period, Appellant called Brooke's mother and told her that he was going to kill Brooke. Around the first of May, Brooke and Appellant got back together and Appellant moved back in with Brooke.

> While Appellant was living with Brooke he was also involved in a relationship with Jennifer Walton who became pregnant by him. Around the first or second week of June 2007, Appellant wanted to move out of Brooke's house and Jennifer arranged for him to stay with a friend of hers, Laura Hendrix. On June 22, 2007, Appellant called Jennifer and asked her to give him a ride. She picked him up from Laura's house at around 10:30 that evening. They drove past the place where Brooke worked to make sure she was at work and they drove past her house to make sure that nobody was there. Jennifer dropped Appellant off on a side street near Brooke's house so that Appellant could walk to the house and retrieve some of his clothes. She left him and drove back to her mother's house. Appellant was going to call another friend to give him a ride to Jennifer's mother's house when he was finished getting his clothes.

> At about 1:00 a.m. on June 23, 2007, Appellant called Jennifer and told her that he was at Denny's eating while waiting for Brooke to get home. He called again

---

[3]     Although Johnson told police during his interview that he thought K.W. was his daughter, see State's Exhibit 120, he now states that he was not K.W.'s biological father, see Dkt. # 22 at 9 n.2.

around 5:00 a.m. to let her know that a friend would bring him home shortly. Appellant called Jennifer two more times around 10:00 a.m. that morning. During these calls he told her that Brooke was dead and that a friend had shot her. Appellant wanted Jennifer to pick him up at a school near Brooke's house. The next time he called he told her that the friend who had killed Brooke was thinking about burning down the house. While Jennifer was waiting for Appellant at the school, Appellant called her again and asked her to pick him up on the street behind the house where Brooke lived. When she arrived at this location, Appellant walked to her car from the driveway of a vacant house. He was carrying two garbage bags which he put in the trunk. When Appellant got into the front passenger seat of Jennifer's car, she noticed that he smelled like gasoline and had blood on his clothes. As she drove away, Jennifer saw flames pouring out the front window of Brooke's house.

Appellant instructed Jennifer to drive to Laura's house where he retrieved the garbage bags from the trunk of the car before they went inside. Appellant placed the bags on the living room floor and started taking things out of them, including money that had blood on it. He washed the blood off of the money and took a shower. When Jennifer asked more questions about what had happened, Appellant told her that his friend had hit Brooke with a hammer. After Appellant got out of the shower he said that he needed to go back to Brooke's house to look for her cell phone because he had used the phone to call Jennifer and he was concerned that his fingerprints would be on it. When they arrived, the street where Brooke's house was located was blocked off and ambulance, fire trucks and police cars were present. Appellant drove to the street behind Brooke's house and looked to see if he had dropped the phone on the driveway of the vacant house he had walked by earlier. He did not find the phone. Appellant next drove to Warehouse Market so that he could put some money on a prepaid credit card. Then they went to the parking lot across the street where Appellant threw his clothes in the dumpster. After stopping at McDonalds and Quiktrip, they went back to Laura's house where Jennifer stayed with Appellant a while before she left him there and went to her mother's house.

Firefighters were called to Brooke's house on east Newton Street at 11:11 a.m. on June 23, 2007. When they arrived and made entry into the house, the inside was pitch black with smoke. After they ventilated the house and cleared some of the smoke they found [K.W.]'s burned body inside the front door on the living room floor behind the couch. The infant was dead. In a room off the living room, firefighters found Brooke Whitaker on the floor partially underneath a bunk bed. She had extensive burns on her body, was unconscious without a pulse and was not breathing. Paramedics initiated resuscitation efforts and a pulse was reestablished. On the way to the hospital paramedics noticed a lot of blood pooling around her head. When they looked closer, they observed large depressions, indentations and fractures on her head. Brooke was pronounced dead shortly after she arrived at the hospital and was later determined to have died from blunt trauma to the head and

smoke inhalation.  Seven month old [K.W.] was determined to have died from thermal injury, the effect of heat and flames.

Investigation of the crime scene revealed numerous items of evidence.  A burned gasoline can was recovered from the front yard of the residence and samples of charred debris were collected from the house.  The debris was tested and some of it was confirmed to contain gasoline.  Additionally, investigators noted blood smears and blood soaked items in numerous places throughout the house.  Brooke's cell phone was found on the living room floor and investigators discovered that two calls had been made from this phone to Jennifer Walton shortly before the fire was reported.

Walton was located and interviewed by the police later that same day.  She told police about Appellant's involvement in the homicide and she told them that she had taken Appellant to a trash dumpster when he returned from Brooke's house after the fire.  When the police went to the dumpster they recovered a white trash bag that contained boots, bloody clothing, Brooke Whitaker's wallet with her driver's license inside and a claw hammer.  They also found blood on the passenger side door handle inside Walton's car.

Pursuant to information given to them by Walton, the police went to Laura Hendrix's house in Catoosa to look for Appellant.  They set up surveillance and observed him exit the house and walk down the street at around 6:00 p.m. on June 23, 2007.  He was arrested at that time on outstanding warrants and was taken to the Tulsa Police Station where he waived his Miranda rights and gave a statement to the police.

Appellant told the police that Jennifer Walton had taken him to Brooke's house to get his stuff the evening of June 22, 2007.  When Brook[e] came home in the early morning hours of June 23, 2007, they talked and started arguing with each other.  During the argument, Brooke pushed him, called him names and got a knife to stab him.  He grabbed a hammer and hit her on the head.  Brooke fell to the floor and asked Appellant to call 911.  Appellant hit her about five more times on the head with the hammer.  Despite her injuries, Brooke was conscious and talking.  She said that her head hurt and felt like it was going to fall off.  Brooke begged Appellant to get help and told him that she wouldn't tell the police what had happened but he wouldn't do it because he didn't want to go to jail.  Instead, Appellant went to the shed and got a gasoline can.  He doused Brooke and the house, including the room where the baby was, with gasoline.  He set Brooke on fire and went out the back door.  Appellant admitted that he was trying to kill Brooke.

Johnson v. State, 272 P.3d 720, 724-26 (Okla. Crim. App. 2012).  Additional facts necessary for a

determination of Johnson's claims will be set forth in detail throughout this opinion.

4

## II.  Procedural History

In an Amended Felony Information, filed in Tulsa County District Court, Case No. CF-2007-3514, Johnson was charged with two counts of First Degree Murder, in violation of Okla. Stat. tit. 21 , § 701.7 (Counts 1 and 2), and one count of First Degree Arson, After Former Conviction of Two or More Felonies, in violation of Okla. Stat. tit. 21, § 1401 (2001) (Count 3). See O.R. Vol. I at 54-62.  The State filed a Bill of Particulars alleging four aggravating circumstances for each of the two murder offenses: (1) the defendant was previously convicted of a felony involving the use or threat of violence; (2) the defendant knowingly created a great risk of death to more than one person; (3) the murder of the victims was especially heinous, atrocious, or cruel; and (4) there exists a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.  Id. at 82 (citing Okla. Stat. tit. 21, § 701.12(1), (2), (4), (7)).

Johnson's trial commenced on June 15, 2009, before the Honorable Dana Kuehn, District Judge.  Attorneys Pete Silva and Gregg Graves of the Tulsa County Public Defender's Office represented Johnson at trial.  On June 25, 2009, at the conclusion of the first stage, the jury found Johnson guilty of both counts of First Degree Murder (Counts 1 and 2) and of First Degree Arson (Count 3).  Tr. Vol. IX at 1871-72; O.R. Vol. VI at 1003, 1006, 1009.   On June 26, 2009, at the conclusion of the second stage, the jury assessed punishment at death on both of the First Degree Murder convictions, after finding the existence of all four aggravating circumstances.  Tr. Vol. X at 2111; O.R. Vol. VI at 1004-05, 1007-08.  At the conclusion of the third stage, the jury found Johnson guilty of First Degree Arson, after five (5) previous convictions, and fixed Petitioner's punishment at life.  Tr. Vol. X at 2120; O.R. Vol. VI at 1010.  On July 28, 2009, Judge Kuehn

formally sentenced Johnson in accordance with the jury's verdicts and ordered the sentences to be served consecutively.  Tr. Sent. at 7-8; O.R. Vol. VI at 1094-1102.

Johnson perfected a direct appeal to Oklahoma Court of Criminal Appeals (OCCA), Case No. D-2009-702. Represented by attorney Curtis M. Allen of the Tulsa County Public Defender's Office, Johnson raised the following nine (9) propositions of error:

| | |
|---|---|
| Proposition I: | Use of traffic warrants to arrest Raymond Johnson was a pretext to effect a warrantless arrest of Raymond Johnson where the Tulsa Police had no jurisdiction; Raymond Johnson's subsequent statement must be suppressed. |
| Proposition II: | Raymond Johnson's statement to police was not voluntarily made; it must be suppressed. |
| Proposition III: | Appellant's rights under both Oklahoma law and the United States Constitution were violated by the district court's failure to instruct the jury that the death penalty could not be imposed unless the jury first found that aggravation outweighed mitigation beyond a reasonable doubt. |
| Proposition IV: | It was reversible error and a violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as corresponding provisions of the Oklahoma Constitution, for the district court to fail to define "Life Without Possibility of Parole" for the jury. |
| Proposition V: | It was reversible error to deny sequestered, individualized *voir dire* in the instant case, violating Appellant's rights pursuant to the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as corresponding provisions of Oklahoma law. |
| Proposition VI: | The jury selection process employed by the district court violated Appellant's rights pursuant to the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as corresponding provisions of the Oklahoma Constitution. |
| Proposition VII: | Capital punishment is unconstitutional as applied.  Appellant's death sentence must be reversed. |

Proposition VIII:    Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Proposition IX:    The accumulation of error in this case deprived Appellant of due process of law and a reliable sentencing proceeding, therefore necessitating reversal pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, as well as Article II, §§ 7 and 9 of the Oklahoma Constitution.

See Brief of Appellant, OCCA Case No. D-2009-702.  On March 2, 2012, the OCCA rejected all of Johnson's claims and affirmed his convictions and sentences.  Johnson, 272 P.3d at 733.  On October 1, 2012, the United States Supreme Court denied Johnson's petition for writ of certiorari. Johnson v. Oklahoma, 133 S. Ct. 191 (2012).

Johnson commenced original post-conviction proceedings on November 13, 2009, in OCCA Case No. PCD-2009-1025.  Represented by Oklahoma Indigent Defense System (OIDS) attorney Wayna Tyner, Johnson filed his original application on July 25, 2011, and presented the following grounds for relief:

Proposition 1:  Mr. Johnson received ineffective assistance of appellate counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

    A.    Appellate counsel was ineffective for failing to raise the following issues:

        1.    Trial counsel were ineffective for acquiescing to the trial court's proposed procedure of conducting the sentencing proceeding on the non-capital arson in the third stage AFTER the capital sentencing proceeding.

        2.    State induced ineffective assistance of counsel.

        3.    The trial court committed reversible error in the capital sentencing stage when it refused to admit Mr. Johnson's relevant mitigating evidence; thereby resulting in an unreliable capital sentencing proceeding.

            a.    (2) Childhood family photographs,

            b.    Mr. Johnson's video and audio recorded sermon (Def's Exh 5),

c.   (1) audio recorded song sung by Mr. Johnson (Def's Exh 4).

4.   Ineffective assistance of trial counsel for failure to adequately investigate, develop and present mitigating evidence.

5.   Trial court committed reversible error when it modified the text of Mr. Johnson's requested instruction on mitigating evidence.

6.   Prosecutorial Misconduct.

Proposition 2: The cumulative impact of errors identified on direct appeal and post-conviction proceedings rendered the proceeding resulting in the death sentence arbitrary, capricious, and unreliable.  The death sentence in this case constitutes cruel and unusual punishment and a denial of due process of law and must be reversed or modified to life imprisonment or life without parole.

See Original Application for Post-Conviction Relief, Case No. PCD-2009-1025.  Johnson filed a separate motion for evidentiary hearing and discovery on post-conviction claims.  In an unpublished opinion, the OCCA denied all requested relief, including Johnson's request for an evidentiary hearing.  See Opinion Denying Application for Post-Conviction Relief and Motion for Evidentiary Hearing, entered Dec. 14, 2012, in Case No. PCD-2009-1025.

Johnson filed his second application for post-conviction relief on February 7, 2014. Represented by attorney Beverly Atteberry, Johnson raised the following propositions of error:

Proposition 1: Mr. Johnson's trial/collateral/appellate counsel failed to adequately investigate, develop, and present critical mitigating evidence regarding Raymond Johnson's social history and important and traumatic events of his life.

Proposition 2: The accumulation of errors violated Mr. Johnson's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

See Second Application for Post-Conviction Relief, Case No. PCD-2014-123 (internal quotation marks and footnote omitted).  Johnson also filed an application for an evidentiary hearing and a motion to seal documents and portions of related pleadings.  In an unpublished opinion, the OCCA denied all of Johnson's requested relief.  See Opinion Denying Second Application for Post-

8

Conviction Relief, Request for an Evidentiary Hearing and Motion to Seal Documents and Portions of Related Hearings, entered May 21, 2014, in Case No. PCD-2014-123.

On January 7, 2013, represented by Assistant Federal Public Defenders Thomas Hird and Sarah Jernigan and attorney Beverly Atteberry, Johnson initiated this federal habeas action by filing an application to proceed in forma pauperis (Dkt. # 2) and a request for appointment of counsel (Dkt. # 1). In his petition, filed December 13, 2013, Johnson identifies the following six (6) grounds for relief:

Ground 1: Appellate counsel was ineffective for failing to raise prosecutorial misconduct claims regarding misstating the law and misleading the jury in second stage proceedings.

Ground 2: Mr. Johnson's rights to effective trial and appellate counsel were violated in regard to the outright exclusion, and reduction, of compelling mitigation evidence.

Ground 3: The jury selection process employed by the trial court violated Mr. Johnson's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Ground 4: Trial and "appellate" counsel failed to adequately investigate, develop, and present critical mitigating evidence.

Ground 5: The lack of adequate instructions to guide the Jury's sentencing decision violated Mr. Johnson's Sixth Amendment right to a fair trial, his Eighth Amendment right to a reliable capital sentencing, and his Fourteenth Amendment right to due process.

Ground 6: The accumulation of errors violated Mr. Johnson's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(Dkt. # 22).

## **GENERAL CONSIDERATIONS**

## I. Exhaustion

Generally, federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition.  28 U.S.C. § 2254(b)(1)(A); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement).  In every habeas case, the Court must first consider exhaustion.  Harris, 15 F.3d at 1554.  "States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights."  Coleman v. Thompson, 501 U.S. 722, 731 (1991) (explaining that the exhaustion requirement is "grounded in principles of comity").  In most cases, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal.  Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can examine the claim under a procedural bar analysis instead of requiring exhaustion.  Id. at 735 n.1.  Also, the Court may exercise its discretion to deny an unexhausted claim that lacks merit.  Fairchild v. Workman, 579 F.3d 1134, 1156 (10th Cir. 2009); 28 U.S.C. § 2254(b)(2).

## II.  Procedural Bar

The Supreme Court has considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules.  See, e.g., Francis v. Henderson, 425 U.S. 536 (1976).  Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground.  Coleman, 501 U.S. at 750; Medlock v. Ward, 200 F.3d 1314, 1323 (10th Cir. 2000).  A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law.  Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995) (citing Ake v. Oklahoma, 470 U.S. 68, 75 (1985)); Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998).  If the state court finding is "strictly or regularly followed" and

applied "evenhandedly to all similar claims," it will be considered "adequate." Maes, 46 F.3d at 986 (citation omitted).  In other words, a state procedural bar "must have been 'firmly established and regularly followed' by the time as of which it is to be applied." Ford v. Georgia, 498 U.S. 411, 424 (1991).

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding.  Coleman, 501 U.S. at 749-50; Sykes, 433 U.S. at 91.  The "cause" standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, or interference by state officials.  Id.  The petitioner must also show "'actual prejudice' resulting from the errors of which he complains." U.S. v. Frady, 456 U.S. 152, 168 (1982).  Alternatively, the "fundamental miscarriage of justice" exception requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 495 (1991).  He must make "a colorable showing of factual innocence" to utilize this exception. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000).  It is intended for those rare situations "where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake." Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995).

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a habeas court apply a "highly deferential standard" under 28 U.S.C. § 2254, one that "demands that

state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks omitted). When a state court has adjudicated a claim on the merits, a federal court cannot grant relief on that claim under § 2254 unless the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The Supreme Court has emphasized that "review under § 2254(d)(1) focuses on what a state court knew and did"; thus, "[s]tate-court decisions are measured against [Supreme Court] precedents as of the time the state court renders its decision." Pinholster, 563 U.S. at 182 (internal quotation marks omitted). "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions . . . ." Williams v. Taylor, 529 U.S. 362, 412 (2000). Federal courts may not "extract clearly established law from the general legal principles developed in factually distinct contexts," House v. Hatch, 527 F.3d 1010, 1016-17 n.5 (10th Cir. 2008), and Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings," id. at 1015, 1016-17.

A state court decision is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams, 529 U.S. at 405-06. It is not necessary that the state court cite, or even be aware of, applicable Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early

v. Packer, 537 U.S. 3, 8 (2002) (per curiam).  A state court decision is an "unreasonable application" of Supreme Court precedent if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Williams, 529 U.S. at 407-08.  A court assesses "objective[ ] unreasonable[ness]," id. at 409, in light of the specificity of the rule: "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  "[A]n unreasonable application of federal law is different from an incorrect application of federal law."  Williams, 529 U.S. at 410.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

Review of substantive rulings under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181; see Black v. Workman, 682 F.3d 880, 895 (10th Cir. 2012) (discussing § 2254 review of state-court merits decisions after Pinholster); Fairchild v. Trammell, 784 F.3d 702, 711 (10th Cir. 2015).  And a federal court must accept a fact found by the state court unless the defendant rebuts the finding "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The Supreme Court has emphasized in the strongest terms the obstacles to relief, observing that § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (internal quotation marks omitted).  To obtain relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." Id. at 102.  Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Id. at 88.

Although federal court deference to the state court's decision is appropriate only on claims "adjudicated on the merits," 28 U.S.C. § 2254(d), the petitioner has the burden of showing that the claim was not so adjudicated.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99; accord Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013) (finding that, where a federal claim is presented to a state court and relief is denied without discussion of the claim, the presumption of a merits adjudication is rebuttable).  "Where there is no indication suggesting that the state court did not reach the merits of a claim, we have held that a state court reaches a decision on the merits even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion." Dodd v. Trammell, 753 F.3d 971, 983 (10th Cir. 2013) (ellipsis and internal quotation marks omitted); see Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999) ("we owe deference to the state court's result, even if its reasoning is not expressly stated"). Under AEDPA, "a habeas court must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## CLAIMS FOR RELIEF

**I.  Ineffective assistance of appellate counsel (Ground 1)**

As his first proposition of error, Johnson claims that appellate counsel provided ineffective assistance of counsel in failing to allege that the prosecutor improperly misstated the law with regard to consideration of mitigation evidence and mislead the jury during second stage proceedings. (Dkt. # 22 at 10). Johnson alleges that "[b]ecause of prosecutorial misconduct in this case, the jury in Raymond Johnson's case was unable to give effect to the second-stage mitigation evidence presented." Id. at 11. Johnson's argument focuses on the impression left with the jury, by both the trial judge and the prosecutor, that inquiry into mitigating circumstances is limited to an inquiry of the defendant's moral culpability. Id. at 12. Johnson alleges that prosecutor William Musseman repeatedly misstated the law with regard to mitigation evidence and characterizes the misstatements as "pervasive" and "egregious." Id. at 14, 16. In response, Respondent asserts that Johnson is not entitled to habeas corpus relief on his claim of ineffective assistance of appellate counsel under 28 U.S.C. § 2254(d). See Dkt. # 43 at 26. Respondent also notes that parts of Johnson's argument are unexhausted[4] and that, because the Court's review of this claim is limited to the record that was before the OCCA when the claim was adjudicated on the merits, the Court is precluded from considering the affidavit of appellate counsel, see Dkt. # 22-2, executed on December 10, 2013,

---

[4]   Respondent alleges that, to the extent Johnson claims that appellate counsel provided ineffective assistance in omitting claims that the trial judge incorrectly instructed the jury, the prosecutor misstated the law during voir dire, and the definition of mitigating circumstances given to the jury is vague, the claims are unexhausted. See Dkt. # 43 at 27 n.7. This Court agrees and finds the claims are now procedurally barred as a result of Johnson's failure to present the claims to the OCCA as part of his application for post-conviction relief. Even if not procedurally barred, the unexhausted claims underlying the allegation of ineffective assistance of appellate counsel are meritless.

15

almost one year after the OCCA denied Johnson's original application for post-conviction relief.[5]
See Dkt. # 43 at 27 n.7.

Johnson first raised a claim of ineffective assistance of appellate counsel for failing to
present claims of second stage prosecutorial misconduct in his original application for post-
conviction relief.  See Original Application for Post-Conviction Relief, Case No. PCD-2009-1025,
at 33-39.  The OCCA denied relief, finding that "Johnson has not shown a reasonable probability
that but for appellate counsel's alleged deficient performance in failing to raise [this issue] on direct
appeal the result of the trial and sentencing proceedings would have been different.  Johnson's
argument fails under the Strickland test."  See Opinion Denying Application for Post-Conviction
Relief and Motion for Evidentiary Hearing, Case No. PCD-2009-1025, at 11-12.

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance
by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue.
Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).  If the omitted issue is meritless, then
counsel's failure to raise it does not amount to constitutionally ineffective assistance under the two-
pronged standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Cargle v. Mullin, 317
F.3d 1196, 1202 (10th Cir. 2003).  To succeed on a claim of ineffective assistance of appellate

---

[5]    The Court notes that when Johnson presented his Ground 1 claim to the OCCA in his
original application for post-conviction relief, Johnson provided an affidavit from his
appellate counsel, Curtis Allen.  See Original Application for Post-Conviction Relief, Case
No. PCD-2009-1025, Attachment 4.  However, in that affidavit, executed July 5, 2011,
appellate counsel states that he focused on record issues only and conducted no first or
second stage extra-record investigation.  Id.  That affidavit is not before the Court in this
habeas action.  Instead, Johnson provides the more detailed Affidavit of Curtis Allen (Dkt.
# 22-2) as presented to the OCCA in support of the second application for post-conviction
relief.  See Second Application for Post-Conviction Relief, Case No. PCD-2014-123,
Attachment 3.  Thus, the affidavit provided in this habeas action was not considered by the
OCCA in resolving Johnson's Ground 1 claim of ineffective assistance of appellate counsel.

counsel for failing to raise prosecutorial misconduct, a petitioner must show that the underlying prosecutorial-misconduct claim is meritorious. Neill v. Gibson, 278 F.3d 1044, 1058, 1062 (10th Cir. 2001); see also Werts v. Vaughn, 228 F.3d 178, 205 (3d Cir. 2000) (concluding that trial counsel's performance cannot be ineffective for failing to object to the prosecutor's proper remarks).

Petitioner first complains that the prosecutor mislead the jury, "from voir dire to the end of the sentencing stage," by misstating the law with regard to consideration of mitigating evidence. See Dkt. # 22 at 12.  Petitioner further alleges that the trial judge compounded the problem by leaving the jury with the impression that consideration of mitigating evidence was limited to that evidence extenuating or reducing the degree of moral culpability or blame. Id. at 11-12.

Generally, there are two ways in which prosecutorial misconduct can result in constitutional error. See DeRosa v. Workman, 679 F.3d 1196, 1222 (10th Cir. 2012). "First, [it] can prejudice a specific right . . . as to amount to a denial of that right." Id. (quoting Matthews v. Workman, 577 F.3d 1175, 1186 (10th Cir. 2009)) (internal quotation marks omitted).[6]  Additionally, absent infringement of a specific constitutional right, a prosecutor's misconduct may in some instances render a habeas petitioner's trial "so fundamentally unfair as to deny him due process." Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974); see Wilson v. Sirmons, 536 F.3d 1064, 1117 (10th Cir. 2008) ("Unless prosecutorial misconduct implicates a specific constitutional right, a prosecutor's improper remarks require reversal of a state conviction only if the remarks so infected the trial with

---

[6]     "The Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner." Boyde v. California, 494 U.S. 370, 377-78 (1990).

unfairness as to make the resulting conviction a denial of due process." (quoting Le v. Mullin, 311

F.3d 1002, 1013 (10th Cir. 2002) (per curiam)) (internal quotation marks omitted)); see also Parker

v. Matthews, 132 S. Ct. 2148, 2153-54 (2012); Romano v. Oklahoma, 512 U.S. 1, 12-13 (1994).

In determining whether a trial is rendered "fundamentally unfair" in light of the conduct of a

prosecutor, a court must:

> . . . examine the entire proceeding, "including the strength of the evidence against
> the petitioner, both as to guilt at that stage of the trial and as to moral culpability at
> the sentencing phase as well as any cautionary steps – such as instructions to the jury
> – offered by the court to counteract improper remarks."

Wilson, 536 F.3d at 1117 (quoting Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006)). "[A]

court should not lightly infer that a prosecutor intends an ambiguous remark to have its most

damaging meaning or that a jury . . . will [necessarily] draw that meaning." Donnelly, 416 U.S. at

647; see Banks v. Workman, 692 F.3d 1133, 1148 (10th Cir. 2012) (noting that the fundamental-

fairness standard for allegedly improper prosecution statements constitutes "a high hurdle"). "[N]ot

every improper or unfair remark made by a prosecutor will amount to a federal constitutional

deprivation." Tillman v. Cook, 215 F.3d 1116, 1129 (10th Cir. 2000).

In this case, Johnson argues that, because the OCCA resolved the ineffective assistance of

appellate counsel claim by addressing only the prejudice prong of the Strickland standard, this

Court's review of the deficient performance prong is de novo. However, the Court need not address

the question because Johnson cannot prevail even if the Court analyzes the deficient performance

prong de novo. Webber v. Scott, 390 F.3d 1169, 1175 (10th Cir. 2004) ("The question of whether

the OCCA reached the merits need not be decided, however, because Webber's claim fails with or

without according the state court's decision AEDPA deference.").

The Court finds that Johnson's underlying prosecutorial misconduct claim lacks merit.  As a result, appellate counsel did not perform deficiently in failing to raise the claim.  First, the prosecutor never stated that the jury should not consider Johnson's second stage mitigation evidence.  In fact, during their closing arguments, the prosecutors repeatedly stated that the jurors should consider whatever mitigating circumstances they found to have been demonstrated (Tr. Vol. X at 2084, 2091-92, 2096, 2105).  Johnson correctly cites to multiple instances during closing argument when the prosecutor stated that mitigating evidence is concerned with the reduction of moral culpability.  Tr. Vol. X at 2092-93, 2094, 2095, 2096.  However, the prosecutor also stated the following:

> Mitigating circumstances.  They're defined in your instructions.  They are, number one, circumstances that may extenuate or reduce, as we have talked about, the degree of moral culpability or blame.
> I know that there are people that care for him.  Is anything you have heard from them a circumstance that extenuates or reduces his degree of moral culpability or blame in these killings?  I submit to you they are not.
> Two, they could be circumstances, which in fairness, sympathy, or mercy maybe you, as jurors, individually or collectively, can decide against imposing the death penalty.  That's for you to decide.

Id. at 2096.  Based on that record, the Court rejects Johnson's contention that there exists a reasonable likelihood that jurors understood the prosecutor's statements to limit consideration of Johnson's mitigating evidence only to the extent it extenuated or reduced moral culpability.  See Dkt. # 22 at 14.

Furthermore, the second stage jury instructions defined the scope of the mitigation evidence to be considered and served to cure any possible confusion attributable to the prosecutor's statements.  Instruction No. 11 directed the jury, in pertinent part, that:

> Mitigating circumstances are 1) circumstances that may extenuate or reduce the degree of moral culpability or blame, or 2) circumstances which in fairness,

19

> sympathy or mercy may lead you as jurors individually or collectively to decide against imposting the death penalty.  The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case.

See O.R. Vol. VI at 1076.  This instruction served to correct any alleged limitation and to broaden the jury's consideration beyond evidence involving moral culpability.  The jury was further instructed in Instruction No. 12 that evidence had been introduced of seven enumerated mitigating circumstances and that "[i]n addition, you may decide that other mitigating circumstances exist, and if so, you should consider those circumstances as well." Id. at 1077.  Finally, the jury was instructed in Instruction No. 13 that they could not impose the death penalty unless they unanimously found that the aggravating circumstance or circumstances outweighed the mitigating circumstances, and that "[e]ven if you find that the aggravating circumstances outweigh the mitigating circumstances, you may impose a sentence of imprisonment for life with the possibility of parole or imprisonment for life without the possibility of parole." Id. at 1078.  Juries are presumed to follow the court's instructions, Richardson v. Marsh, 481 U.S. 200, 211 (1987), and there is no indication that the jury in Johnson's case did not.

Having considered the challenged comments by the prosecutor in context and in context of the  instructions provided to the jury, this Court finds there is not a reasonable likelihood that the jury improperly limited its consideration of the mitigating evidence in violation of the Eighth Amendment based on the prosecutor's comments during second stage.  In addition, Johnson's trial was not rendered fundamentally unfair by the prosecutor's comments.  As a result, Johnson's claim of prosecutorial misconduct lacks merit and appellate counsel did not provide ineffective assistance in failing to raise a meritless claim.  Habeas corpus relief is denied on Ground 1.

## II.  Ineffective assistance of trial and appellate counsel (Grounds 2 and 4)

In Ground 2, Johnson alleges that trial counsel provided ineffective assistance in excluding and reducing available mitigation evidence, and that appellate counsel provided ineffective assistance in failing to raise this claim of ineffective assistance of trial counsel on direct appeal. (Dkt. # 22 at 27).  Johnson characterizes the excluded evidence as "compelling."  Id.  In response, Respondent argues that Johnson is not entitled to habeas relief under 28 U.S.C. § 2254(d).  (Dkt. # 43 at 37).

In Ground 4, Johnson claims that trial and "appellate"[7] counsel failed to adequately investigate, develop, and present critical mitigating evidence.  (Dkt. # 22 at 54).  In response, Respondent argues that, as to claims of ineffective assistance of counsel raised in the original application for post-conviction relief, Johnson is not entitled to habeas relief under 28 U.S.C. § 2254(d).  (Dkt. # 43 at 61).  As to claims raised in the second application for post-conviction relief, Respondent argues that the claims are procedurally barred and should be denied on that basis.  (Dkt. # 58).

### A.  Standards governing ineffective assistance of counsel claims

As stated above, when a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue.  Hawkins, 185 F.3d at 1152.  If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.  Cargle, 317 F.3d at 1201.  In Grounds 2 and 4, Johnson claims that appellate counsel provided ineffective assistance in failing to raise claims of ineffective assistance of trial counsel.

---

[7]     Johnson emphatically claims that "appellate" counsel includes both direct appeal counsel Curtis Allen and post-conviction counsel Wayna Tyner.

To be entitled to habeas corpus relief on a claim of ineffective assistance of trial counsel, Johnson must demonstrate that the OCCA's adjudication of his claims involved an unreasonable application of the two-pronged test set forth in Strickland, 466 U.S. at 687.  Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  Id.; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). These two prongs may be addressed in any order, and failure to satisfy either is "dispositive." Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011).  A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland.  Pinholster, 563 U.S. at 190.

"Review of counsel's performance under Strickland's first prong is highly deferential." Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010).  "Every effort must be made to evaluate the conduct from counsel's perspective at the time." U.S. v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009) (quoting Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1537 (10th Cir. 1994)) (internal quotation marks omitted).  Furthermore, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Byrd, 645 F.3d at 1168 (alteration omitted) (quoting Dever, 36 F.3d at 1537) (internal quotation marks omitted); accord Fairchild v. Workman, 579 F.3d 1134, 1140 (10th Cir. 2009) ("We approach these issues with 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and that 'the challenged action might be considered sound trial strategy.'" (quoting Strickland, 466 U.S. at 689)).

However, while a reviewing court entertains "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Matthews, 577 F.3d at 1190

22

(quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted), the court nevertheless applies "closer scrutiny when reviewing attorney performance during the sentencing phase of a capital case." Cooks v. Ward, 165 F.3d 1283, 1294 (10th Cir. 1998); see also Osborn v. Shillinger, 861 F.2d 612, 626 n.12 (10th Cir. 1988) ("[T]he minimized state interest in finality when resentencing alone is the remedy, combined with the acute interest of a defendant facing death, justify a court's closer scrutiny of attorney performance at the sentencing phase."); cf. Wellons v. Hall, 558 U.S. 220, 220 (2010) (per curiam) ("From beginning to end, judicial proceedings conducted for the purpose of deciding whether a defendant shall be put to death must be conducted with dignity and respect.").

If counsel's performance at sentencing was deficient, a court must then assess whether the petitioner was prejudiced as a result. See Strickland, 466 U.S. at 694. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "To assess prejudice arising out of counsel's errors at a capital-sentencing proceeding, we must 'reweigh the evidence in aggravation against the totality of available mitigating evidence.'" Hooks v. Workman, 689 F.3d 1148, 1202 (10th Cir. 2012) (quoting Young v. Sirmons, 551 F.3d 942, 960 (10th Cir. 2008)). "If there is a reasonable probability that at least one juror would have struck a different balance, . . . prejudice is shown." Id. (internal quotation marks and citations omitted).

In the case of mitigating evidence, the Sixth Amendment imposes a duty on counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Even under AEDPA's deferential standard, "we are . . . conscious of the overwhelming importance of the role mitigation evidence plays in the just

imposition of the death penalty." Mayes v. Gibson, 210 F.3d 1284, 1288 (10th Cir. 2000). Because of the enormous stakes confronted in a capital case, a reviewing court must ensure that "the sentencing jury makes an individualized decision while equipped with the 'fullest information possible concerning the defendant's life and characteristics,' and must scrutinize carefully any decision by counsel which deprives a capital defendant of all mitigation evidence." Id. (quoting Lockett v. Ohio, 438 U.S. 586, 603 (1978)).

### B.  Management of available mitigating evidence (Ground 2)

In Ground 2, Johnson claims that the trial judge, in an effort to insure that the trial lasted no more than its allotted two weeks, excluded second-stage defense evidence and pressured trial counsel to rush the second-stage defense. See Dkt. # 22 at 28. Johnson argues that, in addition to the nine (9) witnesses who testified for the defense in the second stage, the defense had subpoenaed eleven (11) other witnesses who were not called to testify due to "increasing pressure" from the prosecutor and the trial judge to finish the trial in two weeks. Id. Johnson alleges that the prosecutor argued that the anticipated testimony of many of Johnson's mitigation witnesses was cumulative. Id. at 30. Johnson also complains that the prosecutor succeeded in reducing both the playing of a CD, containing eleven tracks performed by Johnson's "Lexington Praise Team," from the entire CD to only 30 seconds of one song, and also the playing of an entire videotaped church service, led by Johnson, to a two minute clip. Id. at 31-32. The trial judge then completely excluded the videotape. Id. at 32 (citing Tr. Vol. X at 2044). Lastly, Johnson complains that the trial judge refused to allow two of five proffered family photographs to be admitted as mitigating evidence. Id. at 33 (citing Tr. Vol. X at 1958).

According to Johnson, trial counsel "certainly should have acquiesced less, and fought more, against the substantial diminution and denigration of his mitigation presentation," and that appellate counsel should have challenged "the actions of the 1) prosecutor, 2) trial court, and 3) trial counsel regarding these matters." Id. at 36. Johnson emphasizes that "[t]he videotape evidence is the centerpiece of this ground for relief and would have been the compelling centerpiece of a mitigation presentation that had one theme: Raymond Johnson's 'life, based upon his conduct when he was previously in prison, is capable of redemption and a life of value.'" Id. at 43. In response to the issues raised in Ground 2, Respondent argues that Johnson is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d). See Dkt. # 43 at 37-56.

Johnson raised these claims of ineffective assistance of counsel in his original application for post-conviction relief. As a preliminary matter, although Johnson did not present separate claims of ineffective assistance of trial counsel, he nonetheless expressed concern that the OCCA would impose a procedural bar on the claims of ineffective assistance of trial counsel because they were not raised on direct appeal. For that reason, Johnson argued that appellate counsel was working under a conflict of interest. Specifically, Johnson alleged that:

> [a]t the time of his direct appeal, Mr. Johnson's appellate counsel, Curtis M. Allen, was an Assistant Public Defender with the Tulsa County Public Defender's Office. Mr. Allen's supervisor, at the time, was Mr. Johnson's lead trial counsel, Pete Silva, who was and currently is the Chief Public Defender for the Tulsa County Public Defender's Office.

See Original Application for Post-Conviction Relief – Death Penalty Case, Case No. PCD-2009-1025, at 3. Johnson argued that, because trial and appellate counsel were not "separate," it would be improper for the OCCA to impose a procedural bar on the claims of ineffective assistance of trial

counsel. Id. at 4. In resolving Johnson's post-conviction claims on the merits, the OCCA explained that:

> this Court is required to consider the merits of each claim of ineffective assistance of appellate counsel. When the claim is that appellate counsel was ineffective for failing to raise issues of ineffective assistance of trial counsel, the merits of the claims involving the alleged failings of trial counsel will necessarily be considered.

(Opinion Denying Application for Post-Conviction Relief and Motion for Evidentiary Hearing, in Case No. PCD-2009-1025, at 3). Based on that reasoning, the OCCA determined that it "need not address the issue of whether appellate counsel failed to raise issues of ineffective assistance of trial counsel because of a conflict of interest."[8] Id. at n.2.

In his original application for post-conviction relief, Johnson characterized this claim as "state-induced ineffective assistance of counsel." See Original Application for Post-Conviction Relief – Death Penalty Case, Case No. PCD-2009-1025, at 6. He argued that his trial counsel "were bullied by the prosecution, and shackled by the trial court into severely limiting its mitigation case." Id. at 11. Johnson also argued that the trial court committed reversible error when it refused to admit two of five proposed family photographs, limited the admission of a recorded song sung by

---

[8]   In the "Introduction" to his habeas petition, Johnson alleges that appellate counsel failed to raise claims of ineffective assistance of trial counsel because of a conflict of interest. See Dkt. 22 at 1-6. To the extent Johnson intends the claim presented in the "Introduction" to be considered and resolved as a separate ground of error, the Court finds that given the procedural history of the "conflict of interest" allegations presented in the state proceedings, the claim is procedurally barred. As in this habeas case, Johnson did not present his conflict of interest claim to the OCCA as a separate ground of error. Furthermore, even if this Court were to consider the conflict of interest claim on the merits, no relief is warranted because Johnson cannot satisfy the prejudice prong of Strickland. The OCCA did not impose a procedural bar on Johnson's ineffective assistance of trial counsel claim because they were not raised on direct appeal. Instead, the OCCA denied Johnson's claims of ineffective assistance of appellate counsel claims on the merits based on its determination this the underlying ineffective assistance of trial counsel claims lacked merit.

Johnson, and excluded a videotaped recording of Johnson preaching while in prison. Id. at 11-20.

The OCCA denied relief on Johnson's claim of ineffective assistance of appellate counsel, finding

as follows:

> Prior to the beginning of the second stage of trial the State objected to many
> of the defendant's listed witnesses on the grounds that their testimony was
> cumulative.  Defense counsel advised the court that he had already submitted a
> shortened witness list.  While the prosecutor still objected on the basis that the
> testimony of some of the remaining witnesses would be similar if not identical,
> defense counsel responded that each witness was important and he or she was going
> to describe his or her own unique relationship and experiences with the defendant.
> Defense counsel stated his intent to streamline the testimony and avoid cumulative
> effect as much as possible.  The trial court overruled the State's objection to the
> cumulative nature of the defendant's intended mitigation witnesses.  Defense counsel
> did, in fact, limit the testimony of some of the mitigation witnesses and did not call
> other listed witnesses to testify.

> Johnson alleges on post-conviction that from the time the State filed its
> written objection to the defendant's mitigation witnesses, defense counsel was
> bullied by both the prosecutor and the trial judge into presenting a very limited case
> in mitigation.  As a result, he argues, trial counsel was constitutionally ineffective
> and appellate counsel was, in turn, ineffective for failing to raise this issue on direct
> appeal.  Although Johnson argues on post-conviction that defense counsel was
> prevented from assisting him during a critical stage of trial causing fundamental
> constitutional error, this argument is not supported and is not well taken.  Johnson
> has not shown that trial counsel's performance was deficient or a reasonable
> probability that but for the alleged failings of trial counsel the outcome of this capital
> sentencing proceeding would have been different.  Thus, we cannot find appellate
> counsel constitutionally ineffective for failing to argue the same on direct appeal.
> See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

> Next, Johnson argues that the trial court committed reversible error in the
> capital sentencing stage when it refused to admit some of the defense's proffered
> relevant mitigating evidence and he asserts that appellate counsel was
> constitutionally ineffective for not raising the issue on direct appeal.  Johnson
> specifically complains that the trial court improperly admitted only three of the five
> childhood family photographs that the defense intended to present, declined to admit
> a two to three minute videotape of him preaching a sermon while he was
> incarcerated, and limited the introduction of an audio recording of him singing to
> only a thirty second portion of a song.  Although Johnson argues strenuously that the
> trial court erred in excluding relevant mitigating evidence at trial and that appellate
> counsel was ineffective for failing to raise the issue on direct appeal, he has failed

to affirmatively prove prejudice resulting from appellate counsel's alleged omission. Accordingly, this argument must fail. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

(Opinion Denying Application for Post-Conviction Relief and Motion for Evidentiary Hearing, in Case No. PCD-2009-1025, at 7-8).

The OCCA resolved the ineffective assistance of appellate counsel claims by analyzing the merits of the underlying claims of ineffective assistance of trial counsel. Upon application of the Strickland standard, the OCCA concluded that trial counsel had not provided ineffective assistance and that appellate counsel had not provided ineffective assistance in failing to raise a non-meritorious claim. Because the OCCA adjudicated the Ground 2 claims on the merits, Johnson must overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190.

### 1. Trial counsel's failure to call additional subpoenaed mitigation witnesses

As to Johnson's claim that appellate counsel provided ineffective assistance in omitting a claim challenging trial counsel's failure to call additional mitigation witnesses, the record demonstrates that, prior to the commencement of the second stage, the trial judge heard argument from counsel concerning admission of second stage testimony and exhibits. See Tr. IX at 1874-98. The prosecutor argued that much of the anticipated mitigation testimony was cumulative. Id. at 1875. The trial judge overruled the objection, stating that "I believe in mitigation the case law is very clear that it – pretty much – it should be pretty liberal in what is allowed. Of course, I can't have like 25 people coming up to say the exact same thing . . . [A]t this time, I am going to overrule it, but take it under advisement." Id. at 1889.

After the State rested during the second stage of trial, trial counsel presented his opening statement and told the jury that "it's our intent and our hope that we can introduce to you an entirely new Raymond and an entirely different Raymond whose life, based upon his conduct when he was previously in prison, is capable of redemption and a life of value." Tr. X at 1976.  In support of that mitigation theme, Johnson called nine (9) witnesses.  First, Johnson's younger half-sister, Artina, testified that she and her family, including her older sister, her mother, and Johnson's step-father, still love Johnson. Tr. Vol. X at 1982-86.  She identified two family photographs, both taken on trips when she and Johnson were children.  Id. at 1988-89.  She described Johnson's relationships with other family members and stated that Johnson has one child, the son of state's witness Jennifer Walton.  Id. at 1981.  She described Johnson's religious upbringing and his involvement in prison ministries.  Id.  1989-94.  She identified a CD, recorded at Lexington Correctional Center, containing songs performed by Johnson and other prisoners.  Id.  at 1995-96.  A thirty (30) second except of the song "Behold the Lamb," sung by Johnson, was played for the jury.  Id. at 1996.

Next, Cory Gibson, a long-time friend of Johnson, testified that he sang in a choir with Johnson when they were teenagers.  Id. at 2007.  His friendship with Johnson became closer when he began working with Johnson's prison ministry, "Seekers of Refuge."  Id. at 2009.  Gibson testified that their friendship served to "keep each other on a straight and narrow path," and that they had remained in contact with each other over the years.  Id. at 2011.

Two fellow inmates, Charles Waymond Shaw and Marty Christopher Williams, both testified concerning Johnson's positive impact on their lives and the lives of other inmates through their involvement in prison ministry programs.  Id. at 2020, 2039, 2041.

Defense counsel also presented five (5) witnesses, Chaplain Larry Adams, Pastor Cynthia Petties, Reverend Vernon Burris, Linda Reed, and Pastor James Edward Reed, who testified about Johnson's involvement in prison ministries and his talents in singing and persuasive preaching. Id. at 2024-25, 2035, 2048-51, 2058, 2072-73.

In his habeas petition, Johnson lists seven (7) subpoenaed witnesses who were not called to testify and summarizes their anticipated testimony. See Dkt. # 22 at 37-38. Those witnesses are Linda Bell Johnson, Petitioner's mother; Bishop A. D. Johnson, Sr., Petitioner's stepfather; Jennifer Walton, Petitioner's ex-girlfriend and mother of his child; Joy Howard, a long-time friend of Petitioner; Chaplain Duane Baker, chaplain for Davis Correctional Center (DCC); Terrance Cook, family friend and Petitioner's fellow inmate at DCC; and Helen Pipkin, a prison minister familiar with Petitioner's involvement with prison ministries during his prior incarceration. Id. Johnson argues the omitted witnesses were "crucial witnesses that could have made a real difference." Id. at 38-39.

The Court disagrees. Johnson's description of the anticipated testimony from those additional seven (7) witnesses confirms that their testimony, concerning his relationships with friends and family and his prison ministries, would have been cumulative of the testimony presented by the nine (9) testifying witnesses. See id.; see also O.R. Vol. III at 390-97. Johnson fails to demonstrate that trial counsel's decision not to present the additional witnesses was not sound strategy. Strickland, 466 U.S. at 690-91.

Furthermore, even if trial counsel had presented all of the subpoenaed second stage witnesses, there was no substantial probability, let alone a conceivable one, that one juror (or more) would have voted against the death penalty. See Richter, 562 U.S. at 112 (defining reasonable

probability as the likelihood of a different result being "substantial, not just conceivable"); Williams v. Trammell, 782 F.3d 1184, 1215 (10th Cir. 2015); Lockett v. Trammel, 711 F.3d 1218, 1233 (10th Cir. 2013). The State presented overwhelming evidence supporting all four (4) aggravating circumstances found by the jury. To support the aggravating circumstance that Johnson had previously been convicted of a violent felony, the State presented a certified copy of a Judgment and Sentence, entered in Cleveland County District Court, Case No. CF-1995-1412, demonstrating Johnson's prior conviction of First Degree Manslaughter and sentence of twenty (20) years imprisonment. See Tr. IX at 1902. In that case, Johnson's conviction resulted from the shooting death of Clarence Oliver on September 11, 1995. Id. at 1904. In addition to the Judgment and Sentence, the State presented four (4) witnesses who testified with regard to the facts of that case. Id. at 1904-39. Johnson's jury learned that Oliver died as the result of being shot four (4) times while seated in his car, id. at 1916, 1921, that Johnson was developed as the suspect in the shooting, id. at 1936, and was ultimately convicted of First Degree Manslaughter, id. at 1937.

The State also incorporated the first stage evidence to support the other three (3) aggravating circumstances. Id. at 1903. Overwhelming evidence presented during the first stage demonstrated that Johnson knowingly created a great risk of death to more than one person when both Brooke Whitaker and her seven-month-old baby, K.W., died as a result of Johnson's actions. Overwhelming evidence, including, but not limited to, photographs of the victims' injuries (State's Exhibits 28, 38, 85, 88, 89); testimony of the firefighters and paramedic describing the condition of the victims' bodies as they were recovered after the fire (Tr. Vol. VI at 1236-37, 1261, 1271-72, 1275-77, 1283); testimony of the medical examiner describing the victims' injuries and causes of death (Tr. Vol. VIII at 1709-31, 1736, 1748, 1749-51, 1752-53, 1756, 1760); and Johnson's videotaped admissions to

Detective Regalado (State's Exhibit 120), demonstrated that the murders were especially heinous, atrocious, or cruel.  See Le v. State, 947 P.2d 535, 550 (Okla. Crim. App. 1997) ("[H]einous, atrocious, or cruel . . . aggravating circumstance requires proof of conscious serious physical abuse or torture prior to death; evidence a victim was conscious and aware of the attack supports a finding of torture.").  Lastly, overwhelming evidence demonstrated that there exists a probability that Johnson would commit criminal acts of violence that would constitute a continuing threat to society. That evidence included the testimony of Brooke Whitaker's mother that Johnson had told her "I'm going to kill your daughter" (Tr. Vol. VI at 1211), and that her daughter feared Johnson was going to kill her (id. at 1208); the testimony of Brooke Whitaker's neighbor that Brooke "was terrified" of Johnson and that Johnson had been threatening to kill Brooke (Tr. Vol. VII at 1526-27); and the videotape of Johnson's confession (State's Exhibit 120), demonstrating his calm demeanor and complete lack of remorse while describing how he repeatedly hit Brooke in the head with a hammer; that he refused her requests to call 911 for medical help because he knew that if he did, he would have to return to prison; that he told Brooke she "deserve[d] to die"; that he walked out to a shed, got a gasoline can, and returned to the house; that he doused the kitchen, the front room, Brooke's room, and the room where the baby was at the time with gasoline; that when he lit Brooke on fire, she immediately got up so he knew she was still alive; and that he knew the baby was in the room that he had doused with gasoline.  See Gilson v. State, 8 P.3d 883, 925 (Okla. Crim. App. 2000) (stating that the continuing threat aggravating circumstance can be supported by "evidence of the callousness of the murder for which the defendant was convicted . . . as well as prior criminal history and the facts of the murder for which the defendant was convicted").

Therefore, under the facts of this case and upon review of the state court record, the Court agrees with the OCCA's conclusion that Johnson fails to demonstrate that but for the alleged failings of trial counsel the outcome of this capital sentencing proceeding would have been different. Because the underlying claim of ineffective assistance of trial counsel lacks merit, appellate counsel did not perform deficiently in failing to raise the claim. Johnson cannot satisfy either prong of Strickland and has failed to demonstrate entitlement to habeas corpus relief under 28 U.S.C. § 2254(d). Habeas corpus relief shall be denied on this claim of ineffective assistance of appellate counsel.

### 2. Failure to challenge trial judge's rulings excluding exhibits

Johnson also alleges that appellate counsel provided ineffective assistance in omitting claims challenging the trial judge's rulings with regard to mitigation exhibits. Johnson focuses his argument on the trial judge's rulings excluding or limiting the following: photographs of Johnson and his family, the CD containing recordings of his singing in a prison band, and the DVD recording of a sermon he preached while in custody serving his sentence for a prior manslaughter conviction. As discussed above, the trial judge excluded two (2) family photographs as cumulative (Tr. Vol. X at 1957-58), but allowed Johnson to present three (3) photographs: one of his son as well as two photographs of himself as a child on family vacations. The trial judge also allowed a thirty (30) second excerpt of one song on the CD, "Behold the Lamb," to be played for the jury. See id. at 1966-67. However, the trial judge denied Johnson's request to play even a two-minute excerpt of the DVD, finding that, in light of the testimony of five witnesses concerning Johnson's involvement in prison ministries, the DVD was cumulative. Id. at 2044. The trial judge also stated that she did

not think the DVD "goes to mitigation" and that, unless Johnson testified, the DVD was hearsay. Id. at 2044-45.

As set forth above, the OCCA cited Strickland, 466 U.S. at 687, and ruled that Johnson had "failed to affirmatively prove prejudice resulting from appellate counsel's alleged omission." See Opinion Denying Application for Post-Conviction Relief and Motion for Evidentiary Hearing, Case No. PCD-2009-1025, at 8. In this habeas case, Johnson has failed to overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190. In light of the strong evidence supporting the aggravating circumstances, as discussed above, neither the admission of two more family photographs nor the playing of additional recordings of Johnson singing would have altered the outcome of the second stage sentencing proceeding. In addition, even if the trial judge erred in excluding the videotape of Johnson preaching, the jury heard multiple witnesses testify with regard to Johnson's involvement in the church and various prison ministries and that he was very effective. As a result, Johnson fails to show that, even if appellate counsel performed deficiently in failing to challenge the trial court's rulings, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. For that reason, Johnson is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) on this part of Ground 2.

### C. Failure to investigate and develop mitigating evidence (Ground 4)

In Ground 4, Petitioner alleges that his attorneys failed to investigate and develop the "social history" of his life. See Dkt. # 22 at 54-55. In support of this claim, Johnson details the evidence developed by post-conviction counsel. Id. at 63-68. Johnson also cites to the report of Victoria Reynolds, Ph.D., for details of Johnson's traumatic life history and its impact on his development

and subsequent behavior.  Id. at 76 (citing Dkt. # 22-11).  In addition, habeas counsel identifies

numerous other witnesses whose testimony supports Dr. Reynolds' findings.  Id. at 81-85.

### 1. Claims raised in original application for post-conviction relief

In his original application for post-conviction relief, Johnson argued that trial counsel failed

to present mitigation witnesses who could "present a different side of him than that which they had

seen in first stage – one that would allow the jury to consider the potential value of his life as a

whole."  See Opinion Denying Application for Post-Conviction Relief and Motion for Evidentiary

Hearing, Case No. PCD-2009-1025, at 9.  The OCCA ruled as follows:

> Johnson claims that several important potential mitigation witnesses who
> could have offered compelling testimony, or who could have added to the argument
> that his life was worth sparing, were not called to testify in mitigation.  Some of the
> evidence he contends these witnesses could have presented was actually introduced
> through the testimony of other witnesses who did testify.  For instance, although
> Johnson's mother did not want to testify in mitigation and was not called to do so,
> Johnson's sister testified that Johnson had grown up with and still had strong family
> support and that her mother loved Johnson and had visited him in prison.  She also
> testified that if Johnson were sentenced to death it would be detrimental to her
> mother.  Although Johnson's step-father, Arthur Johnson, did not testify, Johnson's
> sister testified that he, too, loved and supported Johnson.

> While the failure to call some of these potential witnesses precluded the jury
> from hearing first-hand some positive accounts of Johnson's life, it also precluded
> the jury from hearing some negative testimony about Johnson such as testimony
> about his earlier contacts with the police and his possible gang affiliation as a
> teenager.  The decision not to persuade Johnson's mother to testify kept the jury from
> hearing her opinion that "It is like Raymond has two (2) personalities.  He would be
> the best of the best and then be the worst of the worst."

> Johnson has not shown that trial counsel did not know of both the good and
> the bad that the potential witnesses had to offer.  Nor has he shown that the decision
> not to call each of these witnesses constituted deficient performance of trial counsel.
> Finally, Johnson has failed to meet his burden of showing that the failure to call the
> omitted potential mitigation witnesses was prejudicial.  As Johnson has not shown
> that trial counsel's performance regarding the investigation and development of
> mitigating evidence was deficient or that he was prejudiced by the alleged failings
> of trial counsel, we cannot find that appellate counsel was ineffective for failing to

allege otherwise on direct appeal.  See Strickland, 466 U.S. at 687, 104 S. Ct. at
2064.

Id. at 9-10 (footnote omitted).

Thus, the OCCA resolved the ineffective assistance of counsel claims raised in the original

application for post-conviction relief under both the deficient performance and the prejudice prongs

of Strickland.  To be entitled to habeas relief, Johnson must overcome the "doubly deferential"

hurdle resulting from application of the standards imposed by § 2254(d) and Strickland.  Pinholster,

563 U.S. at 190.  When a petitioner alleges ineffective assistance of counsel stemming from a failure

to investigate mitigating evidence at a capital-sentencing proceeding, the Court must "evaluate the

totality of the evidence – both that adduced at trial, and the evidence adduced in habeas

proceedings."  Smith v. Mullin, 379 F.3d 919, 942 (10th Cir. 2004) (quoting Wiggins v. Smith, 539

U.S. 510, 536 (2003)).  This includes weighing "the evidence in aggravation against the totality of

available mitigating evidence."  Hooks, 689 F.3d at 1202. "In a system like Oklahoma's, where only

a unanimous jury may impose the death penalty, the question is whether it's 'reasonably probabl[e]

that at least one juror would have struck a different balance.'"  Grant v. Trammell, 727 F.3d 1006,

1018-19 (10th Cir. 2013) (quoting Wiggins, 539 U.S. at 537).  Counsel is presumed to have acted

in an "objectively reasonable manner" and in a manner that "might have been part of a sound trial

strategy."  Bullock v. Carver, 297 F.3d 1036, 1046 (10th Cir. 2002).  Where the facts establish that

decisions made by counsel were, in fact, "strategic choices made after thorough investigation of law

and facts relevant to plausible options," those decisions are "virtually unchallengeable."  Strickland,

466 U.S. at 690.  However, "strategic choices made after less than complete investigation are

reasonable precisely to the extent that reasonable professional judgments support the limitations on

investigation."  Id. at 690-91.  Once a decision is determined to be strategic, the petitioner may only

establish deficient performance if "the choice was so patently unreasonable that no competent attorney would have made it." Bullock, 297 F.3d at 1046 (citations and internal quotes omitted).

Here, the Court cannot find that the OCCA unreasonably applied Strickland. As discussed above, Johnson's mitigation witnesses testified about his childhood, his upbringing and relationships with family members, and his participation in church and prison ministries. See Tr. Vol. X at 1978-2075. The additional proposed mitigating evidence presented to the OCCA as part of his original post-conviction application included four (4) affidavits of Rodney Floyd, an investigator for the Capital Post-Conviction Division of the Oklahoma Indigent Defense System (OIDS), providing Oklahoma Department of Corrections (ODOC) records for Johnson; a summary of an interview of Artura Hamilton, Johnson's biological father; a summary of an interview of Laura Hendrix, a friend of Johnson and a first stage prosecution witness; and a summary of an interview of James Reed, Johnson's "adoptive" father and a second stage mitigation witness.[9] See Original Application for Post-Conviction Relief, Case No. PCD-2009-1025, Attachments 6, 7, 10, and 11.   In addition, Johnson provided affidavits of Curtis M. Allen, direct appeal counsel; Linda Johnson, his mother; Arthur Johnson, his stepfather; and Tina Osborn, an employee of Tulsa Community Corrections Center. Id., Attachments 4, 5, 8, and 9.

---

[9]   This Court will not consider the affidavits of investigator Rodney Floyd setting forth what he was told by Artura Hamilton, Laura Hendrix, and James Reed, as they are hearsay. See Neill v. Gibson, 278 F.3d 1044, 1056 (10th Cir. 2001) (holding district court did not abuse its discretion in disregarding inadmissible hearsay investigator affidavits presented to support habeas petition); see also Herrera v. Collins, 506 U.S. 390, 417 (1993) (noting that affidavits submitted in habeas action were "particularly suspect" because they were based on hearsay).

Nothing provided by Johnson in support of his original application for post-conviction relief suggests that trial counsel did not know the information contained in the additional mitigation evidence compiled by post-conviction counsel. The documentary evidence provided by investigator Rodney Floyd, including Johnson's ODOC records and Artura Hamilton's prison and mental health records, came from trial counsels' files. See id., Attachments 6, 7. Thus, it appears trial counsel made a strategic decision not to use those records or information contained therein. James Reed did in fact testify during the second stage of trial and much of the information contained in the post-conviction record was presented during his testimony. Furthermore, Linda Johnson states in her affidavit that defense counsel told her that she did not have to testify if she did not want to and because she "really did not want to testify," she did not. Id., Attachment 5 at ¶ 3. Also, Linda Johnson, Arthur Johnson, and Laura Hendrix, were all listed as defense witnesses, see O.R. Vol. III at 390-400, and, therefore, had presumably been interviewed by trial counsel. Much of the information found in their post-conviction affidavits was presented at trial during the second stage. Specifically, the family and childhood information came in through the testimony of Johnson's sister, Artina. Also, as noted by the OCCA, had trial counsel presented the information identified by Johnson in his original application for post-conviction relief, his jury may have heard not only positive aspects of Johnson's life but also negative aspects, including testimony concerning his additional criminal history and his involvement in gang activity. Again, it appears trial counsel made a strategic decision not to call those witnesses during mitigation. Instead, trial counsel elicited testimony from mitigation witnesses supporting the mitigation strategy that Johnson's life was capable of redemption.

Johnson fails to demonstrate that trial counsel's strategic decisions with regard to mitigation were so patently unreasonable that no competent attorney would have made them. Furthermore, even if trial counsel had presented all of the witnesses and documents proposed in the claim raised in the original post-conviction application, there was no substantial probability, let alone a conceivable one, that one juror (or more) would have voted against the death penalty. See Williams, 782 F.3d at 1215; Lockett, 711 F.3d at 1233; see also Richter, 562 U.S. at 112 (defining reasonable probability as the likelihood of a different result being "substantial, not just conceivable"). Therefore, Johnson cannot satisfy Strickland and has failed to demonstrate entitlement to habeas corpus relief under 28 U.S.C. § 2254(d). Habeas corpus relief shall be denied on this claim of ineffective assistance of counsel.

### 2. Claims raised in the second application for post-conviction relief

On February 7, 2014, or almost two months after filing his federal habeas petition and more than one year after the OCCA denied his original application for post-conviction relief, Johnson filed his second application for post-conviction relief, raising additional claims of ineffective assistance of trial, appellate, and post-conviction counsel. Specifically, Johnson claimed that "trial/collateral/ appellate counsel failed to adequately investigate, develop, and present critical mitigating evidence regarding Raymond Johnson's social history and important and traumatic events of his life." See Second Application for Post-Conviction Relief, Case No. PCD-2014-123, at 7 (internal quotation marks and footnote omitted). The OCCA denied post-conviction relief on these claims, finding them to be procedurally barred. See Opinion Denying Second Application for Post-Conviction Relief, Case No. PCD-2014-123. Respondent filed a surreply (Dkt. # 58) and urges the Court to recognize the procedural bars imposed by the OCCA.

### a.  The OCCA's ruling

Citing Johnson's failure to comply with Oklahoma's procedures, the OCCA found all claims of ineffective assistance of counsel raised in the second application for post-conviction relief to be procedurally barred.  As to Johnson's claim of ineffective assistance of trial counsel, the OCCA cited Coddington v. State, 259 P.3d 833, 835 (Okla. Crim. App. 2011), and Okla. Stat. tit. 22, § 1089(D)(4)(b), (D)(8) (Supp. 2006), and ruled that "[i]t is apparent from Johnson's argument that the basis for each element of this claim was available to defense counsel at the time of trial.  It was, accordingly, available well before Johnson's direct appeal and original application for post-conviction relief, and is therefore waived."  See Opinion Denying Second Application for Post-Conviction Relief, Case No. PCD-2014-123, at 6.  As to Johnson's claim of ineffective assistance of appellate counsel, the OCCA cited Hatch v. State, 924 P.2d 284, 294 (Okla. Crim. App. 1996), and Okla. Stat. tit. 22, § 1089(D)(4)(b), (D)(8) (Supp. 2006), and ruled that "[t]he issue of ineffective assistance of appellate counsel, like any other claim, must be raised at the first opportunity.  Johnson could have raised the issue in his original application for post-conviction relief, but did not.  Accordingly, the claim is not properly before this Court in this subsequent application for post-conviction relief."  See Opinion Denying Second Application for Post-Conviction Relief, Case No. PCD-2014-123, at 7 (internal quotation marks and citation omitted).  As to Johnson's claim of ineffective assistance of post-conviction counsel, the OCCA cited Hale v. State, 934 P.2d 1100, 1102 (Okla. Crim. App. 1997), Okla. Stat. tit. 22, § 1089(D)(8) and (9) (Supp. 2006), and Rule 9.7(G), Rules of the Oklahoma Court of Criminal Appeals, and ruled that "Johnson's second application for post-conviction relief was filed . . . over a year after the latest date upon which the factual basis of his claim against post-conviction counsel should have been discovered with the

exercise of reasonable diligence.  This claim is waived."  See Opinion Denying Second Application

for Post-Conviction Relief, Case No. PCD-2014-123, at 8.

### b.  Procedural bars are independent and adequate

The Court finds that, upon application of the standards discussed in General Considerations,

Part II, above, the procedural bars imposed by the OCCA are independent and adequate to preclude

federal habeas corpus review.  Clearly, the OCCA based its procedural bars on Johnson's failure to

comply with state law.  In his reply to the response to the petition, Johnson relies on Valdez v. State,

46 P.3d 703, 710 (Okla. Crim. App. 2002) (stating that, even when a prisoner has failed to comply

with procedural requirements, the OCCA has the "power to grant relief when an error complained

of has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional

or statutory right"), and argues that the OCCA's procedural rulings are neither adequate to preclude

federal habeas review nor independent of federal law.  See Dkt. # 55 at 20.  In addition, Johnson

discusses "the effect of Martinez v. Ryan, 132 S. Ct. 1309 (2012) and Trevino v. Thaler, 133 S. Ct.

1911 (2013) on Petitioner's Ground Four claims."  Id. at 21, 23-28.  In the surreply (Dkt. # 58),

Respondent addresses Johnson's claims concerning the adequacy and independence of the OCCA's

procedural bar imposed on the claims raised in the second application for post-conviction relief.

The Court rejects Johnson's arguments.  First, the OCCA acknowledged the holding in

Valdez, 46 P.3d at 710-11, but declined to apply the holding to Johnson's claims, stating as follows:

> We reaffirm the conclusion that this Court has the authority to review any error
> raised which has resulted in a miscarriage of justice, or constitutes a substantial
> violation of a constitutional or statutory right.  However, Johnson's situation does not
> present the unique and compelling difficulties found in Valdez.  Johnson's claims
> stem from ordinary investigative decisions like those made by trial counsel in every
> case.  Counsel may or may not demonstrate strategic reasons for those decisions, but
> the decisions are not affected by the actions of others, such as the lack of
> involvement by a consulate.  The probability of a miscarriage of justice in Valdez

41

> concerned a serious substantive issue underlying the finding of ineffective assistance
> of counsel.  Johnson can present no such substantive issue.  Johnson shows neither
> a probability of a miscarriage of justice, nor that he was deprived of a substantial
> constitutional or statutory right.  We decline to exercise our inherent power to
> override all procedural bars and grant relief.

See Opinion Denying Second Application for Post-Conviction Relief, Case No. PCD-2014-123, at

5 (citations omitted).  Thus, in the absence of "unique and compelling difficulties," such as the lack

of consulate involvement as in Valdez, the OCCA declined to review the merits of Johnson's claims.

As a result, Respondent contends that the OCCA's application of a procedural bar is independent

of federal law and adequate to preclude habeas review.  See Dkt. # 58 at 2-3.

The Court agrees with Respondent and finds that Respondent has satisfied the required

burden of proof as whether the OCCA's procedural bar is independent and adequate to preclude

habeas corpus review.  See Bonney v. Wilson, 817 F.3d 703, 708 (10th Cir. 2016) (citing Hooks v.

Ward, 184 F.3d 1206, 1216-17 (10th Cir. 1999)).  Therefore, the Court rejects Johnson's argument

based on Valdez.  See Walker v. Martin,  562 U.S. 307, 316 (2011) (finding that "a discretionary

state procedural rule . . . can serve as an adequate ground to bar federal habeas review" (quoting

Beard v. Kindler, 558 U.S. 53, 60 (2009))); Fairchild, 784 F.3d at 719 (explicitly finding that, even

where the OCCA reports that defendant invoked Valdez, the procedural bars resulting from

application of Okla. Stat. tit. 22, § 1089, and Rule 9.7(G)(3) were independent of federal law);

Banks v. Workman, 692 F.3d 1133, 1145 (10th Cir. 2012) (concluding that Oklahoma's procedural

bar is independent of federal law, notwithstanding the OCCA's power to excuse default in "extreme

cases").

Furthermore, while the Court recognizes the need to be particularly vigilant in analyzing the

adequacy of Oklahoma's procedural bar as applied to claims of ineffective trial assistance not raised

on direct appeal, see generally English v. Cody, 146 F.3d 1257, 1263-65 & nn. 5, 6 (10th Cir. 1998),

the claim of ineffective assistance of trial counsel at issue was first presented to the OCCA in

Johnson's second application for post-conviction relief.  Johnson's claims of ineffective assistance

of both trial and appellate counsel could have been, but were not, raised in the original application

for post-conviction relief.  The Tenth Circuit has affirmed the adequacy of the Oklahoma procedural

bar as applied to claims that could have been, but were not, raised in an initial state application for

post-conviction review.  Cannon v. Gibson, 259 F.3d 1253, 1266 (10th Cir. 2001) (citing Thomas

v. Gibson, 218 F.3d 1213, 1221-22 (10th Cir. 2000); Medlock, 200 F.3d at 1323; Smallwood v.

Gibson, 191 F.3d 1257, 1267-69 (10th Cir. 1999); Moore v. Reynolds, 153 F.3d 1086, 1097 (10th

Cir. 1998)).

Johnson also claims that his court-appointed post-conviction counsel provided ineffective

assistance in failing to raise the defaulted claims of ineffective assistance of trial and appellate

counsel.  However, as discussed above, the OCCA declined to review the merits of the claim of

ineffective assistance of post-conviction counsel, and imposed a procedural bar based on Johnson's

failure to comply with state procedural rules, including Okla. Stat. tit. 22, § 1089(D)(8) and (9), and

Rule 9.7(G), Rules of the Oklahoma Court of Criminal Appeals.[10]  In his reply (Dkt. # 55 at 23-27),

Johnson argues that his claim of ineffective assistance of post-conviction counsel should not be

subject to a procedural bar under the exceptions announced by the Supreme Court in Martinez, 132

---

[10]	Respondent does not address the adequacy of Rule 9.7(G)(3) (providing that "[n]o subsequent application for post-conviction relief shall be considered by this Court unless it is filed within sixty (60) days from the date the previously unavailable legal or factual basis serving as the basis for a new issue is announced or discovered"), and instead specifically states that "the OCCA's sixty-day rule is immaterial" to the procedural bar imposed on the claim of ineffective assistance of post-conviction counsel.  See Dkt. # 58 at 7.

S. Ct. 1309 (2012) (holding that when state law prohibits a defendant from presenting a claim of ineffective assistance of trial counsel on direct appeal, post-conviction counsel's deficient performance in failing to assert the claim on collateral review can serve as cause for the default) and Trevino, 133 S. Ct. 1911 (2013) (holding that the rule in Martinez applied even when the state provided a theoretical opportunity to raise on direct appeal a claim of ineffective assistance of trial counsel, but the design and operation of the state's procedural requirements for doing so often made that theoretical possibility a practical impossibility).[11]  However, the Tenth Circuit Court of Appeals has specifically addressed the issue of "whether Trevino applies to Oklahoma's procedures" for raising a claim of ineffective assistance of trial counsel on direct appeal.  Fairchild, 784 F.3d at 721-23.  In Fairchild, the Tenth Circuit reviewed Oklahoma's procedural rules and found that "Oklahoma provides a reasonable time to investigate a claim of ineffective assistance before raising it on direct appeal."  Id.  Based on Oklahoma's procedural rules and citing a multitude of cases in which the OCCA had reviewed the merits of ineffective assistance of counsel claims in direct appeals, the Tenth Circuit held that the "'design and operation' of Oklahoma's procedural framework" does not "'make[ ] it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal.'"  Id. at 723 (quoting Trevino,

---

[11]     Petitioner argues that, because he was represented both at trial and on direct appeal by attorneys from the Tulsa County Public Defender's Office, a conflict of interest precluded appellate counsel from raising trial ineffectiveness claims on direct appeal and he was effectively unable to raise those claims until he filed his original application for post-conviction relief.  For that reason, Johnson argues that this case falls within the Trevino exception.  This argument is unpersuasive.  First, appellate counsel did in fact raise a claim of ineffective assistance of trial counsel on direct appeal.  See Johnson, 272 P.3d at 732.  Furthermore, the Supreme Court's focus in Trevino was state court procedures.  Here, Johnson attempts to use a claim of appellate counsel ineffectiveness to justify application of the Trevino exception. That argument fails because it exceeds the scope of Trevino.

133 S. Ct. at 1921).  Therefore, in this case, the Supreme Court's ruling in <u>Trevino</u> does not serve to provide an exception to the doctrine of procedural bar for Johnson's claims of ineffective assistance of post-conviction counsel for failing to raise claims of ineffective assistance of trial and appellate counsel in his original application for post-conviction relief.

For the foregoing reasons, the Court finds that the OCCA's procedural bars are both independent and adequate to preclude federal habeas corpus review.  Accordingly, Johnson's claims of ineffective assistance of counsel first raised in his second application for post-conviction relief are procedurally barred and federal habeas review is precluded unless Johnson establishes cause and prejudice or a fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 749-50.

### c.  Ineffective post-conviction counsel claims barred under § 2254(i)

This Court also rejects Petitioner's claim of ineffective assistance of post-conviction counsel under 28 U.S.C. § 2254(i).  That subsection explicitly states that "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  Petitioner raises a specific claim that his state post-conviction counsel provided ineffective assistance.  This case is proceeding under 28 U.S.C. § 2254. The AEDPA bars this Court from granting relief on Petitioner's claim of ineffective assistance of post-conviction counsel.

### d.  Johnson fails to overcome the procedural bars

As "cause" to overcome the procedural bars, <u>Coleman</u>, 501 U.S. at 749-50, Johnson attributes his failure to raise the Ground 4 claims of ineffective assistance of trial and appellate counsel in the original application for post-conviction relief to ineffective assistance of post-conviction counsel.  However, ineffective assistance of post-conviction counsel cannot serve as

cause to explain Johnson's failure to raise these claims in the original application for post-conviction relief. Coleman, 501 U.S. at 752 (because there is no constitutional right to representation in state post-conviction proceedings, a petitioner "bear[s] the risk of attorney error that results in a procedural default" (internal quotation marks and citation omitted)); Spears v. Mullin, 343 F.3d 1215, 1255 (10th Cir. 2003) (citing 28 U.S.C. § 2254(i), Coleman, and Smallwood, 191 F.3d at 1269, for the proposition that "ineffective representation in state post-conviction proceedings is inadequate to excuse a procedural default"); Thomas, 218 F.3d at 1222 (relying on "well-established Supreme Court precedent" to reject an allegation of cause based upon post-conviction counsel's representation). As discussed above, this remains unchanged by the Supreme Court's decisions in Trevino, 133 S. Ct. 1911 (2013), and Martinez, 132 S. Ct. 1309 (2012). Therefore, ineffective assistance of post-conviction counsel cannot serve as cause to overcome the procedural bar applicable to Johnson's claims of ineffective assistance of trial and appellate counsel first raised in the second application for post-conviction relief. Furthermore, Johnson does not argue that a fundamental miscarriage of justice will occur if his claims are not considered.

Therefore, the Ground 4 claims of ineffective assistance of counsel first presented to the OCCA in the second application for post-conviction relief are denied as procedurally barred.

## III. Jury selection process (Ground 3)

As his third proposition of error, Johnson alleges that the jury selection process employed by the trial court violated his rights under the Sixth, Eighth, and Fourteenth Amendments. (Dkt. # 22 at 44). Johnson alleges that a prospective juror, "Juror R," was removed for cause "despite an insufficient record to justify that decision." Id. at 44-45. Johnson also complains that defense counsel was not afforded the opportunity to rehabilitate prospective Juror R before she was excused

for cause.  Id. at 49-51 (citing Miller v. State, 313 P.3d 934, 960-63 (Okla. Crim. App. 2013)

(finding that same trial court judge abused her discretion in refusing to allow defense counsel to

rehabilitate three prospective jurors prior to removal for cause)).  Johnson claims that "[w]ithout

defense counsel being afforded the opportunity for rehabilitation of Juror [R], there can be no

confidence in the court's decision to remove her.  The trial court abused its discretion and the

OCCA's failure to grant relief for same was unreasonable."  Id. at 54.  In response, Respondent

argues that Johnson is not entitled to habeas relief under 28 U.S.C. § 2254(d).  (Dkt. # 43 at 56).

On direct appeal, Johnson argued that the trial court's excusing three prospective jurors for

cause "left him with a group of potential jurors composed of death penalty advocates."  See Johnson,

272 P.3d at 730.  The OCCA denied relief, finding as follows:

> The proper standard for determining when a prospective juror may be
> excluded for cause because of his or her views on capital punishment is whether the
> juror's views would "prevent or substantially impair the performance of his duties
> as a juror in accordance with his instructions and his oath."  Williams v. State, 2001
> OK CR 9, ¶ 10, 22 P.3d 702, 709, quoting Wainwright v. Witt, 469 U.S. 412, 424,
> 105 S. Ct. 844, 852, 83 L. Ed. 2d 841 (1985).  "Due process of law requires that a
> prospective juror be willing to consider all the penalties provided by law and not be
> irrevocably committed to a particular punishment before the trial begins."  Sanchez
> v. State, 2009 OK CR 31, ¶ 44, 223 P.3d 980, 997.  Deference must be paid to the
> trial judge who sees and hears the jurors because the trial judge is in a position to
> personally observe the panelists, and take into account a number of non-verbal
> factors that cannot be observed from a transcript.  Harmon, 2011 OK CR 6, ¶ 18, 248
> P.3d at 929-30; Grant v. State, 2009 OK CR 11, ¶ 17, 205 P.3d 1, 11.  Further,
> where, as in the present case, the trial court used the questions set forth in Oklahoma
> Uniform Jury Instruction (OUJI-CR 2d) 1-5, and the last-recorded answers of these
> prospective jurors indicated that they were not able to consider the death penalty, this
> Court held that the trial court did not abuse its discretion in striking the prospective
> jurors for cause without allowing defense counsel an opportunity to further question
> them.  Jones v. State, 2009 OK CR 1, ¶ 17, 201 P.3d 869, 877.

> Although Appellant makes a broad claim of error regarding the trial court's
> excusal of prospective jurors for cause without allowing defense counsel an
> opportunity to rehabilitate the jurors, he only complains specifically about the
> dismissal of one prospective juror.  The record reflects that Juror R. initially told the

trial court that she could consider all three punishment options and that she could impose the death penalty in the "proper case." However, she later expounded upon this clarifying that the only circumstance under which she could consider imposing the death penalty would be if the case involved someone she knew or her children. When the prosecution moved to have Juror R. removed for cause, defense counsel objected arguing that her inability to consider the death penalty as an option was not clear and he requested the opportunity to question her further. The trial court noted that Juror R.'s response was quite unequivocal about her inability to consider the death penalty in cases in which her children had not been murdered. The court denied defense counsel's request and excused Juror R. for cause. We find on this record that the trial court did not abuse its discretion in declining defense counsel's request to further voir dire this prospective juror and in excusing her for cause after she had been asked the appropriate clarifying questions regarding her willingness to consider the death penalty, and her last recorded response indicated that she was not able to follow the law and consider the death penalty.

We also note that the record clearly does not support Appellant's broad assertion that the trial court excused all prospective jurors who were conscientiously opposed to the death penalty leaving him only with a group of potential jurors composed of death penalty advocates. As the State points out, the trial court denied the prosecution's motion to dismiss for cause one prospective juror who initially indicated that she could never return a verdict which assessed the death penalty but later stated that she could consider the death penalty under certain circumstances, but that she did not support it generally as she considered it to be a "violation of our basic human rights." This prospective juror, although personally opposed to the death penalty, stated that she could consider it as an option and was not removed from the panel for cause. The trial court did not improperly dismiss potential jurors leaving Appellant with a group of potential jurors composed of death penalty advocates. The jurors who served on this case indicated they could consider all three penalties provided by law. There was no abuse of discretion in the manner and extent of the trial court's voir dire. This proposition is denied.

Johnson, 272 P.3d at 730-31.

There is no question that "[c]apital defendants have the right to be sentenced by an impartial jury." Uttecht v. Brown, 551 U.S. 1, 22 (2007). "[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." Morgan v. Illinois, 504 U.S. 719, 727 (1992). An impartial juror in the capital setting is one who,

48

despite his or her views on capital punishment, can follow the trial court's instructions.  Thus, "the

proper standard for determining when a prospective juror may be excluded for cause because of his

or her views on capital punishment . . . is whether the juror's views would prevent or substantially

impair the performance of his duties as a juror in accordance with his instructions and his oath."

Wainwright v. Witt, 469 U.S. 412, 424 (1985) (internal quotations marks omitted).

"[B]ecause determinations of juror bias cannot be reduced to question-and-answer

sessions[,]" the printed record cannot fully capture the qualification assessment.  Id. at 424-26,

434-35.   Reviewing courts must therefore defer to the trial court's determination of whether a

particular juror is qualified to serve.   "Deference to the trial court is appropriate because it is in a

position to assess the demeanor of the venire, and of the individuals who compose it, a factor of

critical importance in assessing the attitude and qualifications of potential jurors." Uttecht, 551 U.S.

at 9.  Adding to this deference is even more deference – the deference embodied in the AEDPA

standard for relief.  In Eizember v. Trammell, 803 F.3d 1129 (10th Cir. 2015), the Tenth Circuit

recently discussed the interplay of these deferential standards:

> How do these established standards play out when we're called on to review not a
> federal trial court on direct appeal but the reasonableness of a state's application of
> federal law on collateral review? In [Uttecht] the Court explained that a federal court
> owes what we might fairly describe as double deference: one layer of deference
> because only the trial court is in a position to assess a prospective juror's demeanor,
> and an "additional" layer of deference because of AEDPA's "independent, high
> standard" for habeas review.  See id. at 9-10, 127 S. Ct. 2218. Indeed, the Court
> stressed that where, as here, the record reveals a "lengthy questioning of a
> prospective juror and the trial court has supervised a diligent and thoughtful voir
> dire, the trial court has broad discretion" on the issue of exclusion.  Id. at 20, 127 S.
> Ct. 2218.

Id. at 1135-36.  See also White v. Wheeler, 136 S. Ct. 456, 460, 462 (2015) (discussing the "doubly deferential" standard and stating that "simple disagreement does not overcome the two layers of deference owed by a federal habeas court in this context" (internal quotation marks omitted)).

Here, the OCCA's ruling is supported by the record demonstrating that the trial judge supervised a diligent and thoughtful voir dire.  Juror R stated that she could not consider imposing the death penalty unless the case involved somebody that she knew or her children.  Tr. Vol IV at 842-43.  Based on Juror R's statements, it is clear that her views would prevent or substantially impair the performance of her duties as a juror in accordance with her instructions and her oath. Consequently, Petitioner has not shown that the OCCA unreasonably denied relief with respect to Juror R.  Because the trial court is invested with broad discretion to conduct voir dire and the OCCA addressed Petitioner's juror related claims in full and with reasoning supported by the record, Supreme Court authority and AEDPA deference mandate the denial of habeas corpus relief on Ground 3.

## IV.  Second stage jury instructions (Ground 5)

In Ground 5, Johnson claims that the second stage jury instructions were inadequate.  (Dkt. # 22 at 103).  Specifically, Petitioner alleges that the jury instructions failed to provide "guidance" on the meaning of the three possible sentences: life, life without parole, and death.  Id. at 104. Johnson claims that "[m]any jurors believe any sentence other than death will allow for the possible discharge of a defendant onto the streets – a risk they are unwilling to take."  Id. at 103-04. According to Johnson, "[t]he lack of adequate instructions to guide the jury's sentencing decision in this case violated Mr. Johnson's Sixth Amendment right to a fair trial, his Eighth Amendment right to a reliable capital sentencing, and his Fourteenth Amendment right to Due Process."  Id. at

104. In support of his claim, Johnson cites <u>Simmons v. South Carolina</u>, 512 U.S. 154 (1994). Johnson acknowledges that the Tenth Circuit Court of Appeals has repeatedly rejected this claim, finding that Oklahoma's three-sentence choice serves to clarify the meaning of the sentencing options. <u>See</u> Dkt. # 22 at 108 (citing <u>Mayes v. Gibson</u>, 210 F.3d 1284 (10th Cir. 2000)). However, Johnson contends that the Tenth Circuit's "reasoning simply 'cannot be reconciled with [the Supreme Court's] well-established precedents interpreting the Due Process Clause.'" <u>Id.</u> at 109 (quoting <u>Simmons</u>, 512 U.S. at 164)). In response, Respondent argues that Johnson is not entitled to habeas relief under 28 U.S.C. § 2254(d). (Dkt. # 43 at 77).

On direct appeal, Petitioner claimed that the trial court erroneously denied defense counsel's request for an instruction defining "life without the possibility of parole," finding that the meaning of the phrase was "self-evident." <u>See</u> <u>Johnson</u>, 272 P.3d at 729. The OCCA reviewed the trial judge's ruling for an abuse of discretion and found as follows:

> This Court has long held that the meaning of life without parole is self-explanatory and an instruction on its meaning is not required. <u>Warner v. State</u>, 2006 OK CR 40, ¶ 158, 144 P.3d 838, 885. <u>See</u> also <u>Murphy v. State</u>, 2002 OK CR 24, ¶ 52, 47 P.3d 876, 886; <u>Young v. State</u>, 2000 OK CR 17, ¶ 102, 12 P.3d 20, 46. However, Appellant argues that this line of cases is outdated. In support of his argument Appellant cites to several cases where the jury asked questions about the punishment of life without parole although in the present case, the jury asked no questions indicating confusion about the punishment of life without the possibility of parole. Appellant also cites to <u>Simmons v. South Carolina</u>, 512 U.S. 154, 156, 114 S.Ct. 2187, 2190, 129 L.Ed.2d 133 (1994), wherein the Supreme Court held that "where the [capital] defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." However, where the jury is instructed on the three punishment options of life, life without the possibility of parole and death, this Court has held that the three-way choice fulfills the <u>Simmons</u> requirement that a jury be notified if the defendant is parole ineligible. <u>Wood v. State</u>, 2007 OK CR 17, ¶ 18, 158 P.3d 467, 475 ("[I]nstructing a capital sentencing jury on the three statutory punishment options, with their obvious distinctions, is sufficient to satisfy the due process concerns addressed in Simmons.").

Appellant's argument regarding the necessity of an instruction defining the punishment option of life without the possibility of parole falls short. If there is a case which calls for the reconsideration of this issue, it is not the case before us. We find Appellant was not denied due process or a fundamentally fair trial when the trial judge declined to provide the jury more information on this issue than is currently required.

Id.

Johnson fails to demonstrate that the OCCA's adjudication of this claim is contrary to, or an

unreasonable application of, clearly established federal law as determined by the Supreme Court.

In Welch v. Workman, 639 F.3d 980 (10th Cir. 2011) (unpublished), the Tenth Circuit Court of

Appeals rejected the habeas petitioner's claim that his constitutional rights were violated by the trial

judge's refusal to instruct the jury on the definition of life without the possibility of parole,

distinguishing Simmons and finding as follows:

In Simmons, the Supreme Court held when the defendant's future dangerousness is at issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process requires that the sentencing jury be told the defendant is parole ineligible. Id. at 156, 114 S. Ct. 2187. The Court reasoned that consideration of a defendant's future dangerousness is affected by the possibility the defendant may be allowed to return to society. Id. at 168-69, 114 S. Ct. 2187. Similarly, in Shafer v. South Carolina, the Court held, because the jury was only given two sentencing options – life imprisonment or death – without being told the meaning of life imprisonment, the sentence must be reversed. 532 U.S. 36, 121 S. Ct. 1263, 149 L. Ed. 2d 178 (2001).

In applying Simmons, we have concluded that if the trial court simply directs the jury to review the instructions again, the defendant's due process rights are not violated. See McCracken v. Gibson, 268 F.3d 970, 980-81 (10th Cir. 2001); McGregor v. Gibson, 219 F.3d 1245, 1256 (10th Cir. 2000), overruled en banc on other grounds by 248 F.3d 946 (10th Cir. 2001). Conversely, in cases in which the trial court informs the jury that it is not to consider the issue of whether the defendant is parole ineligible, we have found a due process violation. See Mollett v. Mullin, 348 F.3d 902, 915 (10th Cir. 2003) (determining trial court violated defendant's due process rights by stating, "matters of parole are beyond the purvue [sic] of the jury or the court to consider") (quotation marks omitted); Johnson v. Gibson, 254 F.3d 1155, 1164, 1166 (10th Cir. 2001) (holding trial court's response, "[i]t is inappropriate for you to consider the question asked," "did more than give a

non-responsive answer" but, contrary to Supreme Court precedent, "told the jury that parole eligibility could not be considered . . . .") (quotation marks omitted).

Welch, 639 F.3d at 1005.

As noted by the OCCA, the jury in this case did not ask for clarification of the meaning of life without parole. Johnson, 272 P.3d at 729. Nothing in the record suggests Johnson's jury suffered from confusion with regard to the sentencing options. This Court may not depart from controlling legal authority clearly set forth in a published decision of the Tenth Circuit Court of Appeals. See U.S. v. Spedalieri, 910 F.2d 707, 709 n.2 (10th Cir. 1990) ("[a] district court must follow the precedent of this circuit") (citations omitted). The Tenth Circuit has repeatedly rejected attempts to apply Simmons/Shafer to Oklahoma's three-option sentencing scheme, absent highly unusual circumstances not present in this case. Welch, 639 F.3d at 1005. The false choice at issue in Simmons simply does not come into play when the jury is told, as it was here, that it has three distinct sentencing options and those options distinguish (on their face) between life imprisonment with and without the possibility of parole. Id. Because Johnson's reliance on Simmons has been squarely foreclosed by the Tenth Circuit, Johnson is not entitled to habeas corpus relief on Ground 5.

## V.  Cumulative error (Ground 6)

As his final proposition of error, Johnson alleges that the accumulation of errors violated his rights under the Sixth, Eighth, and Fourteenth Amendments. See Dkt. # 22 at 110. Johnson raised cumulative error claims on direct appeal and in both applications for post-conviction relief. As to the cumulative error claim raised on direct appeal, the OCCA found as follows:

> [u]pon review of Appellant's claims for relief and the record in this case we conclude that although his trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require relief because they did not render his trial

fundamentally unfair, taint the jury's verdict, or render sentencing unreliable. Any errors were harmless beyond a reasonable doubt, individually and cumulatively.

Johnson, 272 P.3d at 733. The OCCA also denied relief on Johnson's cumulative error claim raised on post-conviction, finding that "[h]aving determined on direct appeal that there was no accumulation of error sufficient to warrant reversal of his conviction or modification of his sentence, and having found no merit to any of the claims raised here, there is no basis for granting post-conviction relief on this cumulative error claim." See Dkt. # 22-1 at 12 (Opinion Denying Application for Post-Conviction Relief and Motion for Evidentiary Hearing, Case No. PCD-2009-1025). Lastly, the OCCA denied relief on the cumulative error claim raised in the second application for post-conviction relief, finding that "[h]aving determined that all of Johnson's claims are waived, we find no basis for granting post-conviction relief on this claim of cumulative error." See Opinion Denying Second Application for Post-Conviction Relief, Case No. PCD-2014-123, at 8 (citations omitted).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." U.S. v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review. Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009). Cumulative impact of non-errors is not part of the analysis. Le, 311 F.3d at 1023 (citing U.S. v. Rivera, 900 F.2d 1462, 1470-71 (10th Cir. 1990)). "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have

been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant, 727 F.3d at 1025 (quoting Rivera, 900 F.2d at 1470).

Having rejected each of Petitioner's claims of constitutional error, the Court finds he has shown no cumulative error warranting habeas relief.  The OCCA's denials of Johnson's cumulative error claims were not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Habeas corpus relief is denied on Ground 6.

## VI.  Requests for an evidentiary hearing and for discovery

In his petition, Johnson requests that he be allowed to engage in discovery (Dkt. # 22 at 126-30) and that the Court hold an evidentiary hearing on Grounds 1, 2, and 4 (id. at 122-26), and on "any other issue, substantive or procedural, which involves facts not apparent form the existing record and on any issue that involves facts disputed by Respondent" (id. at 126).  Both requests shall be denied.

In his request for discovery, Johnson states that he "is concerned prosecutors may not have disclosed exculpatory evidence in this case." (Dkt. # 22 at 129).  Specifically, Petitioner states that "exculpatory/mitigating evidence may exist in relation to the victim Brooke Whitaker and her family, particularly her brother and biological father." Id.  Significantly, however, Johnson never presented a claim to the OCCA alleging that the prosecutors failed to disclose exculpatory or mitigating evidence.  As a result, those claims are unexhausted and procedurally barred. Furthermore, Johnson's guilt has never been contested and any argument to the contrary is not credible.  Johnson's request for discovery is denied.

Also, it is clear that an evidentiary hearing is unwarranted in this case. As to that part of Ground 4 found to be procedurally barred, an evidentiary hearing is unnecessary to make this legal determination. See McCleskey v. Zant, 499 U.S. 467, 494 (1991) ("The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard."). In addition, as to the claims raised in Grounds 1, 2, and 4 which the Court addressed on the merits, the Court has given due consideration to the materials Petitioner provided to the OCCA in support and determined that no relief under 28 U.S.C. § 2254 is warranted. As a result, the Court is precluded by the AEDPA and Pinholster from entertaining new evidence on these claims. Pinholster, 563 U.S. at 185 ("evidence introduced in federal court has no bearing on § 2254(d)(1) review"); Jones v. Warrior, 805 F.3d 1213, 1222 (10th Cir. 2015) (citing Pinholster and denying a request for an evidentiary hearing due to a petitioner's failure to satisfy Section 2254(d)); Wood v. Trammell, No. CIV-10-829-HE, 2015 WL 6621397, at *36 (W.D. Okla. Oct. 30, 2015) ("petitioner is not entitled to an evidentiary hearing on claims in which this court has denied relief pursuant to Section 2254(d) because those claims are reviewed in light of the record before the OCCA"). The Court further finds that there are no disputed factual questions remaining that could possibly entitle Johnson to habeas corpus relief. He has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2), or any other governing principle of law. Williams, 529 U.S. 420.

Accordingly, Johnson's requests for an evidentiary hearing and for discovery are denied.

## CERTIFICATE OF APPEALABILITY

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant."  The Court recognizes that "review of a death sentence is among the most serious examinations any court of law ever undertakes." Brecheen v. Reynolds, 41 F.3d 1343, 1370 (10th Cir. 1994).  To be granted a certificate of appealability, however, Johnson must demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists of reason or that the questions deserve further proceedings. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  "[O]bviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor."  Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (citations omitted).

The Court reviewed each of Johnson' propositions of error, and found none of the claims merited or warranted habeas relief.  However, the Court has carefully considered each issue and finds that the following enumerated issues could be debated among jurists or could be resolved differently by another court:

Ground 1:  Ineffective assistance of appellate counsel.

Ground 2:  Ineffective assistance of counsel.

Ground 4:  Ineffective assistance of counsel.

Additionally, this Court finds that these issues deserve encouragement to proceed further. See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot, 463 U.S. at 893).

## **CONCLUSION**

After careful review of the record in this case, the Court concludes that Johnson has not established that he is in custody in violation of the Constitution or laws of the United States.  His petition for writ of habeas corpus shall be denied.

57

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.     The Clerk of Court shall note the substitution of Terry Royal, Warden, as party respondent

in place of Anita Trammell, Warden.

2.     The petition for writ of habeas corpus (Dkt. # 22) is **denied**.

3.     Johnson's motions for an evidentiary hearing and for discovery (Dkt. # 22) are **denied**.

4.     A certificate of appealability is **granted** as to the claims of ineffective assistance of counsel

raised in Grounds 1, 2, and 4.

5.     A separate judgment shall be entered in this matter.

**DATED** this 11th day of October, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE